IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| STEVE PELL, *et al.*,<br><br>        Plaintiffs,<br><br>vs.<br><br>HMC KEA LANI, LP,<br>CCFH MAUI LLC, *et al.*,<br><br>        Defendants. | Case No. 17-cv-00529-DKW-KJM<br><br>**ORDER (1) GRANTING MOTION FOR SUMMARY JUDGMENT, AND (2) DENYING AS MOOT VARIOUS PRE-TRIAL MOTIONS** |

## INTRODUCTION

Pell seeks to hold Defendants HMC Kea Lani, LP and CCFH Maui LLC (collectively, the Kea Lani Defendants) liable for a serious injury that he suffered in October 2015 while boogie boarding in the ocean fronting the Kea Lani Defendants' hotel in Wailea, Maui, Hawaii. The Kea Lani Defendants move for summary judgment, principally asserting the satisfaction of their duty to warn Pell of hazardous ocean conditions, pursuant to Hawaiʻi Revised Statutes Section 486K-5.5 (Section 486K-5.5). The Court agrees that the undisputed facts show exactly that. Specifically, the record shows that Pell asked to rent a boogie board from the hotel, the Kea Lani Defendants' employees refused to rent a board to him due to a "red flag" warning, and Pell was injured after he nonetheless

obtained and used a boogie board from a member of the public. In addition, Pell admits that he saw the red flag flying at the time he attempted to rent a boogie board from the hotel, knew what the red flag meant, saw a sign at the entrance to the beach fronting the hotel that warned of the precise ocean condition that he claims injured him, and personally observed the ocean, including these conditions, before entering. Because these facts demonstrate, as a matter of law, that the Kea Lani Defendants satisfied their duty to warn, the Court GRANTS the motion for summary judgment.

## BACKGROUND

### I. Factual Background

On October 17, 2015, Pell and his family checked-in to the Fairmont Kea Lani Resort ("the Hotel") in Wailea, Maui, Hawaii. Depo. of Gary Sutton at 11:19-12:4, Dkt. No. 98-20.

On October 22, 2015, the Hotel's staff posted a red flag at the entrance to the beach fronting the Hotel by 11:04 a.m. Depo. of Fadisiota Faafiti at 23:11-24:3, Dkt. No. 98-4. A security officer at the Hotel, Kekealani Ishizaka, was on duty that day and observed ocean conditions to be dangerous when the red flag was posted. Depo. of Kekealani Ishizaka at 6:22-7:4, 25:6-21, Dkt. No. 98-14.

At approximately 1:30 p.m., Pell's daughter asked her father to take her boogie boarding. Kea Lani Defendants' Concise Statement of Facts (CSF) at ¶ 16, Dkt. No. 98; Plaintiffs' Concise Statement of Facts (CSF) at ¶ 16, Dkt. No. 105. Pell would not have gone into the ocean if his daughter had not asked him to take her boogie boarding. Depo. of Steve Pell at 33:18-20, 133:22-134:2, Dkt. No. 98-19. Pell then asked a Hotel employee if he could rent boogie boards for himself and his daughter. 10/22/2015 Guest Injury Report at 2, Dkt. No. 98-16; Pell Depo. at 60:2-4. Pell's rental request was denied. Pell Depo. at 60:5-6, 20. After asking why, Pell was told by the employee that boogie board rentals were not permitted due to the red flag being posted for high surf. *Id.* at 58:1-5, 60:22-61:2. The employee sought assistance from Ishizaka because Pell did not agree with the Hotel's rental decision. Ishizaka Depo. at 23:7-12. Pell asked Ishizaka how other people on the beach had boogie boards, and Ishizaka told him that those individuals must have brought their own boards. Guest Injury Report at 2. Pell and his daughter left Ishizaka without any boogie boards. *Id.*

While walking to the beach, Pell saw the red flag flying at the entrance to the beach fronting the Hotel. Pell Depo. at 61:8-12. Pell knew that the red flag signified a high surf warning because the Hotel's sign adjacent to the beach ("the Sign") stated so. Decl. of Steve Pell at ¶ 6, Dkt. No. 105-1. The Sign, from the

3

top, stated "Please Observe Beach Conditions", "No Lifeguard on Duty", and "Warning[.]" Faafiti Depo. at 36:10-21; Exh. 12 to Pell Depo. at 4-5, Dkt. No. 98-15. Below the rectangular red box that contained the word, "Warning," eight images or pictograms of ocean and/or beach conditions were depicted, including "High Surf" and "Dangerous Shorebreak[.]" *Id*. at 5. The image for "Dangerous Shorebreak" stated: "Waves break in shallow water. Serious injuries could occur even in small surf." Depo. of Allen Cabe at 122:14-17. Below the eight images, appeared two flag-shaped rectangles, one in red and one in yellow. Exh. 12 to Pell Depo. at 5. Next to the red rectangle, the Sign stated: "Red Flag Posted", "High Surf", and "Warning[.]" *Id*. Below the two flag-shaped rectangles, the Sign read as follows: "Entering the ocean can be dangerous at any time. Any of the above conditions may be present at any time." *Id*. All of the messages set forth above appear on the Sign in capitalized letters of various sizes and, except for the words under each image, in various graduations of bold type face. *See id*.

Upon reaching the beach, Pell observed the ocean for approximately 10-15 minutes. Pell Depo. at 68:18-25. Pell observed waves of one to two feet breaking directly in front of him along the shoreline. *Id*. at 80:11-24. Just before going into the ocean, Pell asked another beachgoer if he could borrow that

4

person's boogie boards. *Id*. at 69:17-21. Pell borrowed boogie boards from the beachgoer. Kea Lani Defendants' CSF at ¶ 19; Plaintiffs' CSF at ¶ 19. After entering the ocean, Pell rode two waves on a boogie board without incident. Pell Depo. at 84:22-24. The first two waves were about one to two feet high, consistent with those he had observed before entering. *Id*. at 86:16-21. Pell used his borrowed boogie board to ride a third wave and was injured in that process after being "thrown" by the wave into the ocean bottom. *Id*. at 87:4-7, 88:5-9.[1]

## II. **Procedural Background**

This case began on October 20, 2017 with the filing of the original complaint. Dkt. No. 1. On June 4, 2018, Plaintiffs Steve Pell, Dionna Pell, Shannon Bailey, Emma Pell, Stevi Pell, J.P., and L.P. (collectively, Plaintiffs) filed the operative amended complaint against the Kea Lani Defendants and numerous Doe and Roe individuals and entities. Dkt. No. 14. Therein, Plaintiffs assert a single cause of action for negligence in failing to warn about an unreasonably dangerous condition in the ocean fronting the Hotel.

---

[1] Pell could not recall whether the height of the third wave was the same as the first two. Pell Depo. at 87:17-21.

On June 5, 2019, the Kea Lani Defendants moved for summary judgment on the failure to warn claim. Dkt. No. 97. The Kea Lani Defendants assert that (1) they are not liable pursuant to HRS Section 486K-5.5 because (a) they discharged their duty to warn about the dangerousness of the ocean, (b) Pell saw and understood the meaning of the red flag, and (c) Pell understood the hazardous conditions presented by the ocean, (2) Pell assumed the risk that he could be injured by the dangers inherent in boogie boarding, and (3) they exercised reasonable care in providing multiple warnings to guests about the hazards posed by the ocean.

On June 14, 2019, Plaintiffs filed an opposition to the motion for summary judgment. Dkt. No. 104. Plaintiffs argue that the Kea Lani Defendants are not entitled to summary judgment because they warned about an ocean condition–high surf–that did not exist and failed to provide an adequate warning of a different ocean condition–dangerous shorebreak–that was responsible for Pell's injury. Plaintiffs assert that the Sign failed to advise about the particular risk of harm associated with any ocean condition, how to avoid any condition, or which condition among the eight pictograms represented on the Sign existed on a particular day. Plaintiffs emphasize *Tarshis v. Lahaina Inv. Corp.*, 480 F.2d 1019

(9th Cir. 1973), for the proposition that a jury should be allowed to determine whether the Kea Lani Defendants satisfied their duty to warn.

After the Kea Lani Defendants filed a reply, Dkt. No. 132, this Court held an August 20, 2019 hearing on the motion for summary judgment, Dkt. No. 142. This Order now follows.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim in the case on which the non-moving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party. *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## DISCUSSION

The Court begins and ends its analysis with the duty to warn. Because the Court finds that there are no genuine disputes of material fact that the Kea Lani Defendants warned Pell of ocean conditions that may occur in the ocean fronting

the Hotel, including the dangerous shorebreak that Pell specifically alleges injured him, the Kea Lani Defendants are entitled to summary judgment on the sole claim of negligence as a matter of law.[2]

HRS Section 486K-5.5 is the operative statute governing a Hotel's duty to warn in the circumstances presented here. Specifically, Section 486K-5.5 governs the liability of hotels in Hawaiʻi for injuries suffered by the hotel's guests on account of a hazardous condition on the beach or in the ocean fronting the hotel–precisely what undisputedly occurred here. Section 486K5.5 provides as follows:

> In a claim alleging injury or loss on account of a hazardous condition on a beach or in the ocean, a hotelkeeper shall be liable to a hotel guest for damages for personal injury, death, property damage, or other loss resulting from the hotel guest going onto the beach or into the ocean for a recreational purpose, including…boogie boarding…, only when such loss or injury is caused by the hotelkeeper's failure to warn against a hazardous condition on a beach or in the ocean, known, or which should have been known to a reasonably prudent hotelkeeper, and when the hazardous condition is not known to the guest or would not have been known to a reasonably prudent guest.[3]

Thus, for a hotel to be liable under Hawaii law under the circumstances presented here, a plaintiff must show the following occurred: (1) a guest (2) suffered an

---

[2]The Court, thus, need not address the other arguments raised by the Kea Lani Defendants, such as whether Pell assumed the risks inherent in boogie boarding.
[3]Section 486K-5.5 also provides that "beach" means the beach fronting the hotel.

injury (3) that was caused (4) by a hotel's (5) failure to warn (6) about a hazardous condition (7) on a beach or in the ocean (8) that is known or should have been known by a reasonably prudent hotel and (9) not known or would not have been known by a reasonably prudent guest.

It is undisputed that *some* of these elements occurred. Pell was a *guest* of a *hotel*, he suffered a serious *injury*, and the injury took place in the *ocean*. Importantly, however, although Plaintiffs dispute whether the Hotel provided a warning about a hazardous condition, the facts show that there is no such dispute. Specifically, the facts show that the Hotel *warned* guests, including Pell, about eight hazardous conditions, including the hazardous condition upon which Pell relies–dangerous shorebreak. In addition, when Pell attempted to rent a boogie board–the activity during which Pell was subsequently injured–from the Hotel, two different Hotel employees told him that the Hotel would not rent him one and why. Put another way, the Hotel did not *fail* to warn Pell about dangerous shorebreak or, even, boogie boarding. Instead, the Hotel, by way of the Sign and its employees' verbal warnings, warned Pell about the very condition and activity that allegedly caused his injury. Notably, the Sign, which Pell admits to have seen, included a pictogram for "Dangerous Shorebreak" with the following verbiage: "Waves break in shallow water. Serious injuries could occur even in small surf." In addition,

the Sign warned that dangerous shorebreak, like all the conditions identified on the Sign, "may be present at any time" and "[e]ntering the ocean can be dangerous at any time."

In an attempt to deflect from these clear, undisputed facts, Plaintiffs make a number of arguments, none of which achieve their purpose. First, Plaintiffs make a series of assertions about what the Sign did not do. Plaintiffs assert that the Sign did not mention which condition(s) "existed on any given day" or, as Pell put it in his declaration, the Sign did not advise him about any "ongoing" condition(s). *See* Pell Decl. at ¶ 10. Plaintiffs further assert that the Sign did not advise about the "particular risk of harm" created by any condition and did not advise about "how to avoid" any of the listed conditions. The problem with all of these purported deficiencies with the Sign is that not one of them is required by Section 486K-5.5. Section 486K-5.5 does not require a hotel to warn guests about whether an ocean condition exists at the very moment a guest observes or enters the ocean.[4] Ocean conditions are ever-changing and expecting a hotel to adjust its warning signs as quickly cannot possibly be the duty that Section 486K-5.5 imposes. Nor does Section 486K-5.5 require a hotel to warn guests about the

---

[4]The Court notes, however, that, in refusing to rent Pell a boogie board, the Hotel effectively provided him with a warning about boogie boarding in the moments leading up to his injury.

"particular risk of harm" of an ocean condition. To the extent it does, Pell never offers why warning that "serious injury" could occur even in the presence of small surf does not carry that burden. And finally, Section 486K-5.5 does not require a hotel to warn a guest about how best to avoid an ocean condition. Instead, Section 486K-5.5 requires a hotel to warn its guests "against a hazardous condition on a beach or in the ocean"–something which the Hotel did when it warned Pell about dangerous shorebreak and seven other conditions that may exist at any time on the beach or in the ocean.[5]

Second, Plaintiffs argue that, in posting a red flag, the Hotel warned about high surf, a condition that "did not exist." At oral argument, Plaintiffs' counsel added that, in seeing the red flag, it was "human nature" for Pell to ignore the other non-high surf conditions warned about on the Sign. As for the principal assertion that the Hotel warned about a condition that did not exist, Plaintiffs again mis-read Section 486K-5.5. The statutory provision does not require a hotel to warn about whether an ocean or beach condition is present at an exact moment in time.

---

[5]If Section 486K-5.5 did require the things Plaintiffs argue were missing from the Sign, the statute would need to read quite differently, perhaps something like: "…only when such loss or injury is caused by the hotelkeeper's failure to warn against (1) a hazardous condition *then occurring* on a beach or in the ocean, known, or which should have been known to a reasonably prudent hotelkeeper, and when the hazardous condition is not known to the guest or would not have been known to a reasonably prudent guest, (2) *the particular harm(s) that may be caused by such a condition*, and (3) *how to avoid such a condition*.

11

There is a very good reason for this: conditions, such as high surf, are often not amenable to such exact warnings. As the Sign itself stated, this is because ocean conditions "may be present at any time." Section 486K-5.5 also does not require a hotel to provide warnings of conditions that a guest agrees exist or a guest observes before entering the ocean. If it were otherwise, there would be no point in Section 486K-5.5 requiring a condition to be unknown to a guest or a reasonably prudent one.[6] And finally, Pell offers no support for the curious assertion that he could simply ignore the shorebreak and other warnings provided by the Hotel because the Hotel repeatedly warned about high surf. Indeed, the mere assertion borders on the non-sensical.[7]

Third, Plaintiffs rely on *Tarshis* for the proposition that the Kea Lani Defendants' liability must go to a jury for resolution. As an initial matter, the Court notes that *Tarshis* was decided in 1973–more than 20 years *before* Section

---

[6]Along a similar vein, Plaintiffs appear to suggest that high surf "did not exist" because the waves Pell saw in the ocean did not match the waves depicted in the relevant pictogram. Putting aside that the pictogram is not to scale, again, Pell's agreement or lack thereof with the Hotel's declaration of high surf is completely irrelevant to whether the Kea Lani Defendants warned him of a hazardous condition.

[7]Counsel's assertion at oral argument that "human nature" compelled (and excused) Pell's actions is, of course, preposterous. Apart from there being no evidence in the record as to the "nature" of humans in this regard, the Sign at issue in this case specifically stated that *any* of the ocean conditions could be present at any time and did *not* state that, in the event of a warning about one condition, the other conditions could be ignored. Why Pell, given these facts, thinks he was permitted, or that it was reasonable, to do otherwise, is not evident.

486K-5.5 became the law in Hawaiʻi. *See* Senate Bill No. 2663 § 4 (making Section 486K-5.5 effective as of its approval, which occurred on June 7, 1994). As such, the *Tarshis* court did not evaluate the facts present there using what is now the present state of the tort law in Hawaiʻi.[8] Moreover, while there are some similarities, the material factual and legal issues in *Tarshis* are different than those here and command a different result.

In *Tarshis*, a guest was injured after being thrown from the ocean onto a beach fronting the guest's hotel. 480 F.2d at 1020. On the day of the accident, red flags and signs were positioned along the hotel's beach frontage, with the signs warning about dangerous surf conditions and asking guests to use the hotel's swimming pools. While the injured guest saw the red flags, she alleged that she did not see the signs warning of dangerous surf conditions, did not receive verbal warnings concerning the same, and observed "slight waves." The district court granted summary judgment in favor of the hotel, finding that the hotel was under no duty to warn the guest about dangerous conditions in the ocean because the dangers inherent in swimming in the ocean should have been known to a person of ordinary intelligence. *Id*. The Ninth Circuit reversed, concluding that, based on

---

[8]*See Rygg v. Cty. of Maui*, 98 F. Supp. 2d 1129, 1135 n.3 (D. Haw. 1999) (stating that, "the holding in *Tarshis* appears to have been legislatively overridden by [Section 486K-5.5]").

13

the evidence presented, the guest was entitled to present to a jury her theory that the condition of the surf represented an unapparent danger of which the hotel failed to adequately warn. *Id.* at 1021. In doing so, the Ninth Circuit stated that "[w]hether or not the ocean fronting [the hotel's] property would have appeared dangerous to an ordinarily intelligent person is a question of fact inappropriate for summary adjudication." *Id.*

*Tarshis* is inapposite for three separate and alternative reasons. First, the knowledge imputed to a person of ordinary intelligence (or, as Section 486K-5.5 casts it, a reasonably prudent person) is only relevant if a hotel *fails* to warn about a hazardous condition. As the Court's foregoing discussion explains, *in this case*, the Hotel did not fail to warn Pell about hazardous conditions in the ocean, including the dangerous shorebreak condition he specifically identifies as responsible for his injuries. Second, even if *Tarshis* could be construed as more generally applicable in the sense of when the evidence may entitle a party to present his theory to a jury, *Tarshis* is factually different from this case. Notably, unlike in *Tarshis*, here, (1) Pell acknowledges that he saw the Sign, which included its eight pictograms and other explicit warnings, and (2) it is undisputed that Pell was verbally warned that he could not rent a boogie board from the Hotel. Third, and alternatively, even if the Hotel's warnings to Pell in this case could be

14

considered deficient in some manner, the facts here show that Pell *knew* about the dangerous shorebreak before entering the ocean. In other words, the Court need not imagine what a person of ordinary intelligence would have known when Pell entered the ocean because *Pell* himself knew of the precise dangers of which he now complains. *See* Haw. Rev. Stat. § 486K-5.5 (providing that a hotel may be liable for a failure to warn when, *inter alia*, "the hazardous condition is not known to the guest *or* would not have been known to a reasonably prudent guest.") (emphasis added). In particular, the undisputed facts here show that Pell personally observed the ocean for 10-15 minutes before entering, he personally observed waves of 1-2 feet during this time, he personally observed those waves breaking directly in front of him on the beach, and there is no evidence that conditions were any different when he entered the ocean and commenced boogie boarding. In this light, Pell was more than aware that, if he rode one to two feet waves on a boogie board, those waves would break dangerously on the beach (a risk that the Hotel's Sign, once again, specifically identified). In short, legally and factually, *Tarshis* does not control.

For these reasons, because Plaintiffs have failed to show any genuine dispute of material fact on an essential element of their sole negligence claim in this case, and the undisputed facts demonstrate that the Hotel has fulfilled its statutory duty

to warn, the Court finds that the Kea Lani Defendants are entitled to summary judgment.

## **CONCLUSION**

In this case, it should not be forgotten that Plaintiffs seek to recover for a serious injury Pell suffered due to dangerous shorebreak while boogie boarding in our ocean waters. Plaintiffs seek such a recovery even though the only named defendants in this action warned Pell about hazardous ocean conditions, including dangerous shorebreak, Pell saw and read the sign containing the foregoing warnings, and the Kea Lani Defendants expressly refused to rent Pell a boogie board, the very activity in which he was engaged at the time of his injury. While it is, of course, unfortunate what took place in the ocean after Pell was able to borrow a boogie board from another beachgoer, pursuant to Section 486K-5.5, the Kea Lani Defendants are not liable for what transpired in light of the evidence presented in this case. As a result, the Motion for Summary Judgment, Dkt. No. 97, is GRANTED.

In light of the foregoing ruling, the presently pending pre-trial motions, to wit, the Kea Lani Defendants' Motion to Exclude Certain Opinions and Testimony of Dr. Steven Businger, Dkt. No. 127, Motion to Bifurcate Trial, Dkt. No. 129, and

Motion to Preclude Plaintiffs' Claims for Economic Damages and to Limit Plaintiffs' Experts' Testimonies, Dkt. No. 134, are DENIED AS MOOT.

Finally, the Court notes that, while the Kea Lani Defendants have moved for and been granted summary judgment, the amended complaint lists numerous other defendants, but only identifies them in the form of Doe or Roe. Although the amended complaint was filed more than a year ago, it does not appear that the Doe and Roe defendants have been identified or served in this case. Additionally, based upon the Court's review, the docket does not reflect any status regarding these defendants. As a result, Plaintiffs are ORDERED TO SHOW CAUSE why the Doe and Roe defendants in the amended complaint should not be dismissed for failure to serve and/or prosecute. Plaintiffs shall respond to the order to show cause forthwith and no later than seven (7) days after entry of this Order.

The Court will postpone the entry of final judgment in this case pending receipt of Plaintiffs' response to the order to show cause.

IT IS SO ORDERED.

DATED: August 27, 2019 at Honolulu, Hawaiʻi.

Derrick K. Watson
United States District Judge